**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| ROY T. HANNIBLE, | ) | Case No.: 1:10-cv-01395 JLT (PC) |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATION |
| | ) | GRANTING MOTION TO DISMISS WITHOUT |
| v. | ) | PREJUDICE FOR FAILURE TO EXHAUST |
| | ) | ADMINISTRATIVE REMEDIES |
| ARNOLD SCHWARZENEGGER, et al., | ) | |
| | ) | |
| Defendants. | ) | (Doc. 23) |
| | ) | |
| | ) | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.   Pending before the Court is Defendants' motion to dismiss filed on September 7, 2012. (Doc. 23) For the reasons set forth below, the Court recommends the motion to dismiss be **GRANTED** and the matter be **DISMISSED WITHOUT PREJUDICE.**

**I.     Plaintiff has failed to exhaust his administrative remedies under the PLRA**

The Prison Litigation Reform Act requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion is a prerequisite to the inmate filing a lawsuit. See Porter v. Nussle, 534 U.S. 516, 524 (2002); Booth v. Churner, 532 U.S. 731, 739 (2001). The PLRA requires the inmate to exhaust every level in the administrative process. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).

1

The goals of the PLRA's exhaustion requirement are to: (1) "eliminate unwarranted federal court interference with the administration of prisons;" (2) "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and, (3) "reduce the quantity and improve the quality of prisoner suits." Woodford v. Ngo, 548 U.S. 81, 84-85 (2006). Therefore, "the PLRA exhaustion requirement requires full and proper exhaustion." Id. at 92-94. The Supreme Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532. Further, the exhaustion of remedies is required, regardless of the relief sought by the prisoner, as long as the administrative process can provide some sort of relief on the prisoner's complaint. Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

The grievance and appeal procedure for inmates in the custody of the California Department of Corrections and Rehabilitation, is a four-step process. Vaden v. Summerhill, 449 F.3d 1047, 1048-1049 (9th Cir. 2006); Cal. Code Regs. tit. 15, §§ 3084.1-3084.6. In 2009, generally, the inmate was required to file an informal inmate appeal within 15 days of the incident. Brown v. Valoff, 422 F.3d 926, 929-930 (9th Cir. Cal. 2005). If denied at this First Level, the inmate can appeal to the Second Level which, generally, is to the warden or the warden's designee. Id. The Third Level Appeal is conducted by the CDCR's Director or designee. Id. Only a final decision on the merits from the Third Level Appeal satisfies the exhaustion requirement under the PLRA. Cal. Code Regs., tit 15, § 3084.7(d)(3) (2011); Brodheim v. Cry, 584 F.3d 1262, 1265 (9th Cir. 2009).

Importantly, "[t]he requirements of the prison's grievance process, not the PLRA, define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007. "[I]f prison regulations do not prescribe any particular content for inmate grievances, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.'" Johnson v. Testman, 380 F.3d 691, 697 (2nd Cir.2004) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir.2002)). However, the grievance must

"provide enough information . . . to allow prison officials to take appropriate responsive measures. [citation]" <u>Griffin v. Arpaio,</u> 557 F.3d 1117, 1121 (9th Cir. 2009).

The exhaustion requirement of § 1997e(a) does not impose a pleading requirement, but rather is an affirmative defense under which defendants have the burden of proving the plaintiff failed to exhaust the available administrative remedies before filing a complaint in the District Court. <u>Jones,</u> <u>supra,</u> 549 U.S. at 216. A motion raising a prisoner's failure to exhaust the administrative remedies is properly asserted by way of an unenumerated motion under Fed.R.Civ.P 12(b). <u>Wyatt v. Terhune,</u> 315 F.3d 1108, 1119 (9th Cir.2003); <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union,</u> 837 F.2d 365, 368 (9th Cir.1998) (per curium). In determining whether a case should be dismissed for failure to exhaust the administrative remedies, "the court may look beyond the pleadings and decide disputed issues of fact" in a procedure that is "closely analogous to summary judgment." <u>Id.</u> at 1119–20. When the court concludes the prisoner has not exhausted all of his available administrative remedies, "the proper remedy is dismissal without prejudice." <u>Id.</u>

## II.   Statement of Facts

Plaintiff's complaint stems from an incident on August 3, 2009, in which he was attacked by his cellmate, Vargas. (Doc. 15 at 3-4) Plaintiff claims that before the attack, he reported to the "inmate clerk responsible for processing bed and cell moves," that he needed to move because he was not compatible with his cellmate. <u>Id.</u> at 4. However, he was not moved. In addition, Plaintiff alleges that during the incident, he moved toward the front of the cell, where a window is located, to alert staff of the attack. (Doc. 15 at 4) He claims Defendant Aguilera saw the attack but failed to intervene. <u>Id.</u>

On August 16, 2009, Plaintiff filed a 602 grievance complaining that, due to his medical condition, he should not have been placed with a cellmate. (Doc. 1 at 7) Plaintiff asserted that if he was placed in a single cell, he would not have been attacked on August 3, 2009. <u>Id.</u> Plaintiff asked that his grievance be granted and that he be provided a single cell until he recovered from his medical condition. <u>Id.</u>

The grievance was denied at the first level on August 30, 2009. <u>Id.</u> Plaintiff appealed to the second level on September 24, 2009, which was denied also. (Doc. 1 at 7; Doc. 23-3 at 2; Doc. 23-4 at 2) Plaintiff did not appeal to the third level. <u>Id.</u>

On the same day as the attack, Plaintiff was issued a rules violation report for assaulting his cellmate with a weapon.  (Doc. 23-3 at 12)  In the report, Officer Pease, indicated that he was alerted that there was a fight in Plaintiff's cell.  Id.  When he arrived at the cell, Pease observed that both inmates had injuries that seemed consistent with a fight.  Id.  When the inmates were ordered to exit the cell, Vargas reported that Plaintiff had stabbed him in the ear and that because Plaintiff stabbed him he "battered" Plaintiff in return.  (Doc. 23-3 at 13)  Plaintiff admitted that he "stabbed [Vargas] with a pencil" but claimed it was in self-defense.  Id.  Plaintiff pled not guilty to the rules violation.  Id.

On August 28, 2009, after conducting a hearing, the hearing officer found Plaintiff guilty and assessed a loss of 360 days credit and 10 days loss of yard time.  (Doc. 23-3 at 12, 16-19)  Plaintiff appealed the determination on September 15, 2009.  (Doc. 23-3 at 6-8)  In this appeal, Plaintiff asserted that Vargas assaulted him and left him unconscious on the cell floor.  Id. at 6.  He claimed also that Defendant Aguilera looked into the cell and saw Vargas assaulting him while the two were on the lower bunk.  Id. at 8.  He reported that he made eye contact with Aguilera who then stepped away.  Id.  Believing that he would not receive any assistance from Aguilera, Plaintiff admitted that he then stabbed Vargas with the pencil to try to stop the attack.  Id.  Nevertheless, Plaintiff claimed that "I did not provoke the fight nor did I fight back at anytime."  Id. at 7.  Plaintiff claimed that he was being sexually harassed by Vargas and that he reported this to Captain Walker who failed to take any action. Id.  Given all of this, Plaintiff sought a dismissal of the rules violation report.  Id. at 6.

This appeal was reviewed at the second level and denied on December 30, 2009.  (Doc. 23-3 at 9-10, 29, 30.  Warden Yates determined that, though Plaintiff had the right to defend himself, he improperly escalated the violence when he chose to use the pencil as a stabbing weapon.  Id. at 31. Yates reported to Plaintiff that if he wished to pursue a claim against Captain Walker, he had to raise it in a different appeal because "**This appeal response will only address the appropriateness of the disciplinary**."  (Doc. 23-3 at 31, emphasis added)

Plaintiff appealed to the third level of review.  (Doc. 23-3 at 4)  In this appeal, Plaintiff took the same position as he had at the second level.  Id.  Once again, Plaintiff was advised that even if it was assumed that Plaintiff did not provoke the fight and was only defending himself, this would not

4

absolve him of the offense.  Id.  Thus, the Appeals Examiner determined that, though he was entitled to defend himself, Plaintiff improperly escalated the violence through the use of a weapon.  Id.  Thus, Plaintiff's appeal was denied.  Id.  Nevertheless, this determination fully exhausted this grievance.

Defendants argue that Plaintiff failed to exhaust his grievance submitted in response to the incident though they admit that he exhausted the grievance related to the rules violation report.  (Doc. 23 at 4)  Defendants argue that the grievance related to the rules violation report—which sought a reversal of the discipline imposed--failed to apprise prison officials of the problem about which Plaintiff now complains.  Id. at 4, 5.

Though Plaintiff sought and was granted an extension of time within which to oppose this motion and was given a warning pursuant to Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003), Plaintiff has failed to file any opposition to this motion.

**III.    Analysis**

The grievance procedures set forth by the CDCR provide the process by which an inmate may complain about the conditions of his confinement.  Porter, 534 U.S. at 532.  Notably, these procedures are accompanied by deadlines by which the inmate must take action.  For example, before 2011, the inmate must have submitted his grievance within 15 days of the event at issue.  (15 Cal. Code. Regs. Tit. 15, § 3084.6(c)).[1]

Here, on August 16, 2009, Plaintiff timely submitted his grievance related to the altercation.  (Doc. 1 at 7)  He claimed that his housing classification, which required him to have a cellmate despite that he had undergone recent back surgery, was in error.  Id.  Plaintiff sought to have this classification changed so he would not have a cellmate.  Id.  When this grievance was denied at the second level, Plaintiff did not appeal further.  (Doc. 23-3 at 2-32; Doc. 23-4 at 2)  Importantly, Plaintiff was aware of Aguilera's role in the event at the time that he submitted this grievance, but failed to note that any officer contributed to the attack.  (Doc. 1 at 7)

On the other hand, though the Court agrees that Plaintiff's August 16, 2009 grievance did not provide notice that Defendant Aguilera failed to protect him from the ongoing attack, the extent of the

---

[1] Beginning 2011, inmates were provided 30 days to do so.  Id.

notice provided by the September 15, 2009 grievance, is unclear.  (Doc. 23-3 at 6-8)  In this later grievance, Plaintiff complained that Aguilera looked into the cell during the fight and saw the cellmates fighting.  Id. at 8. Plaintiff claims that he made eye contact with Aguilera but she merely walked away.  Id.  He accused Aguilera of lying and he blamed her lack of intervention as the impetus for his use of the weapon.  Id.  On the other hand, this grievance explicitly sought only to have the disciplinary determination reversed.  (Doc. 23-3 at 6-8)  Thus, this express limitation on the relief sought caused such ambiguity in the grievance that the Court finds it did not sufficiently apprise the CDCR of the problem for which he now seeks damages. McCollum v. California Dept. of Corrections and Rehabilitation, 647 F.3d 870, 876 (9th Cir.2011).  ["We determine whether an inmate's claim has been exhausted by reference to the prison's own grievance requirements, Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir.2009), which necessitate that the inmate 'describe the problem and action requested,' Cal.Code Regs. § 3084.2(a)."]  In fact, a reasonable interpretation, in light of the relief sought, is that Aguilera's conduct was mentioned only to justify Plaintiff's use of the weapon.

On the other hand, even if there was no ambiguity, the grievance cannot be construed as exhausting the issues unrelated to the disciplinary hearing because it was not timely submitted.  These issues were known to Plaintiff at the time of the event and, therefore, he was required to raise them no later than 15 days after the event, given the requirements of the regulations at the time.  Cal.Code Regs. § 3084.8(b).  However, this grievance was not was submitted until 45 days after the incident. The Ninth Circuit has confirmed, "[t]o survive a motion to dismiss, the inmates' claims must be both exhausted and timely." McCollum, 647 F.3d at 876.  Thus, because the grievance was not timely submitted as to conduct unrelated to the disciplinary proceeding, the Court finds Plaintiff has not exhausted his administrative remedies as to the issues raised in his complaint.

In so finding, the Court rejects the notion that an inmate who has suffered a disciplinary proceeding is given "two bites at the apple" to exhaust non-disciplinary but incident-related, issues. An inmate is not permitted to submit a grievance that omits claims and then later, revive the very claims he should have raised initially in an appeal from an adverse disciplinary decision.  Woodford v. Ngo, 548 U.S. at 83-84 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without

imposing some orderly structure on the course of its proceedings.")  Any other determination would be nonsensical.[2]  Because the Court finds Plaintiff has not exhausted his administrative remedies, this matter must be dismissed without prejudice.

### ORDER

Based upon the foregoing, the Court **DIRECTS** the Clerk of the Court to assign this matter to a District Judge.

### FINDINGS AND RECOMMENDATION

Based upon Plaintiff's failure to exhaust his administrative remedies, the Court recommends:

1.      That the complaint be **DISMISSED WITHOUT PREJUDICE**.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are forewarned that the Court does not anticipate granting extensions of time for this purpose.  In addition, the parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 26, 2012**                    **/s/ Jennifer L. Thurston**
                                                                     UNITED STATES MAGISTRATE JUDGE

---

[2] Taken to its logical conclusion, failing to grant the motion to dismiss here would mean that an inmate who suffers an attack due to an officer's inaction but who complies with prison rules during the attack would have but one opportunity to grieve the situation while an inmate who violates prison rules during the attack, would have two; this cannot be.